416 A.2d 1102

**COMMONWEALTH of Pennsylvania**

**v.**

**James O. MARTIN, Appellant.**

Superior Court of Pennsylvania.

Argued July 31, 1979.

Filed Dec. 21, 1979.

Norris E. Gelman, Philadelphia, for appellant.

Franklin E. Noel, Assistant District Attorney, for Commonwealth, appellee.

Before WATKINS, MANDERINO and CIRILLO, JJ.*

WATKINS, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County, Criminal Division, by defendant-appellant after his conviction by a jury of voluntary manslaughter.

The victim was shot inside a Philadelphia bar on April 30, 1977, and died of a gunshot wound to the left side of the chest. At trial two Commonwealth witnesses testified that the defendant and the victim were arguing outside the bar and that the victim had been pushed by the defendant whereupon the victim ran inside the bar. The defendant then pursued the victim inside the barroom and once inside fired the gun which killed the victim, after attempting to fire at the victim during the chase. Defendant was arrested in Georgia on May 5, 1977 by Georgia police. Upon being arrested and given the *Miranda* warnings, he told police that he had shot the victim during a struggle for the gun and that it was the victim who originally had the gun. At trial, the Commonwealth produced an expert witness who testified that the firing of the gun was not from close range thereby contradicting the defendant's version of the incident to the effect that the gun went off during the struggle. Defendant was sentenced on February 2, 1978 to five to ten years in prison.

▮ Defendant's first allegation of error was that the trial court abused its discretion by permitting the Commonwealth to death qualify the jury when it was obvious that no aggravating circumstances were involved in the trial so as to

* Justice Louis L. Manderino of the Supreme Court of Pennsylvania, and Judge Vincent A. Cirillo of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

justify treating the case as a potential capital case. He argues that the Commonwealth's death qualifying the jury denied defendant a jury composed of a "fair cross-section of the community." In capital cases potential jurors who are opposed to the death penalty under any circumstances at all may be excluded from the jury. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Defendant argues that the instant case was not even arguably one which could be classified as a capital case and asserts that the Commonwealth merely used the death qualifying procedure in order to obtain a "conviction oriented" jury. However, the jury makes the initial determination of whether "aggravating circumstances" exist so as to raise the case to the level of a capital one. *Commonwealth ex rel. Fitzpatrick v. Bullock*, 471 Pa. 292, 370 A. 2d 309 (1977).

In the instant case defendant had been charged with first degree murder. Until the trial testimony was completed it was not certain as to whether the killing would rise to the level of first degree murder and *Bullock*, supra, appears to have finally resolved the matter in the Commonwealth's favor. That case specifically denied trial courts the right to make any pre-trial investigation as to whether any "aggravating circumstances" exist in a murder case. Defendant claims that the Commonwealth should be charged with the responsibility of knowing whether aggravating circumstances exist. However, witnesses' trial testimony often differs from the statements they give prior to trial and it is often impossible for anyone to know prior to trial what testimony will be adduced at the trial. For example, *18 P.C.S.A. 1311(d)(7)* provides that where a defendant knowingly creates a grave risk of death to another person in addition to the victim of the offense during the commission of the offense that an "aggravating circumstance" exists. Whether such a situation occurred during a murder is solely for the jury's determination and may only be determined from the facts of each specific case presented during the trial of that case. The fact that the jury did not find defendant guilty of first degree murder does not change the fact that it might

have done so had it felt that sufficient evidence of aggravating circumstances had been presented during the trial.

■ Defendant also argues that the prosecutor committed reversible error in her summation to the jury because she stated her personal opinion as to the credibility of certain testimony. During her summation the prosecutor stated that:

"To the extent that the statement admits that the defendant did the shooting, I think you can accept it to that extent. It contained a version of the incident which is contradictory to the version of the witnesses. I think that the Commonwealth witnesses proved that his version is not accurate. It is not true. It was made up. And I think you could understand why it would be made up. Because who would have the stronger motive in this case for lying?

Defendant also complains of the following remark made by the prosecutor during summation which pertains to the testimony of one of the Commonwealth witnesses, a 16 year old youth, who described the shooter as being 4' 9" tall:

"I suggest to you that this is not a serious problem of identification in this case.

"A lot of people are confused by height and I would suggest to you that the witness described two men to the police and she may have gotten confused on the witness stand as to which of the men she was describing."

Contrary to the defendant's allegation, the use of the words "I think" when used in this context are not an expression of personal belief. The remarks were merely meant to urge the jury to make a fair inference from the facts adduced during the trial of the case even if they were improper they amounted to harmless error here where the defendant himself admitted the shooting but based his defense on other grounds. Since a prosecutor may always make a fair inference from the record testimony no reversible error occurred here. *Commonwealth v. Glass*, 486 Pa. 334, 405 A.2d 1236 (1979). See also *Commonwealth v. Green*, 251 Pa.Super. 318, 380 A.2d 798 (1977).

■ Defendant further claims that his statement made to the police after his Georgia arrest to the effect that he did the shooting should have been suppressed as the product of an illegal arrest. However, there is no question but that the Philadelphia police had probable cause to arrest the defendant and even if his Georgia arrest was illegal, any illegality attached to this arrest in no way tainted his statement given to the police. See *Commonwealth v. Jacobs*, 445 Pa. 364, 284 A.2d 717 (1971). Furthermore, the defendant waived extradition to Pennsylvania and thereby voluntarily submitted himself to Pennsylvania jurisdiction thereby curing any defect in the legality of the arrest warrant being served outside of Pennsylvania.

■ Finally, defendant claims that it was reversible error for the trial court to advise the jury as to sentencing ranges for the charges of manslaughter. However, 18 C.P.S.A. 1311 expressly mandated that the jury be instructed as to the penalties for all three degrees of murder. Both voluntary and involuntary manslaughter are lesser included offenses of murder. *Commonwealth v. Boone*, 450 Pa. 357, 301 A.2d 699 (1973). In any event, the statute did not proscribe a trial judge from instructing a jury on voluntary and involuntary manslaughter and we see no prejudice to defendant in so doing. Defendant urges us to hold the statute (18 C.P.S.A. 1311) unconstitutional as he claims that it preoccupies the jury's mind with sentencing. In *McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), the United States Supreme Court clearly established that a statute which allowed a jury to be aware of sentencing alternatives was not unconstitutional. Therefore, we hold that this contention of the defendant is also devoid of merit.

Judgment of sentence affirmed.

MANDERINO, J., concurs in the result.

This decision was reached prior to the death of MANDERINO, J.